Good afternoon, your honors. Eric Slotkin, I'm the EF of Ronald Schleis. I'm going to accept a reserve two minutes for rebuttal. We're asking the court that the court remand Mr. Schleis' Social Security Disability Claim for a computation of benefit. We do believe that the three-part credit of true rules of living garrison has been made. Alternatively, we are asking that if further proceedings are to be added, that it include a re-evaluation of the opinion of treating physician Dr. Duke. To begin, there's no question here that the administrative lawyer judge made multiple errors. It's now contested that the administrative lawyer judge did not properly weigh symptoms testimony, did not properly consider restrictions and limitations set forth by two consulting physician opinions, and did not properly consider vocational evidence. There is also no contest that the crediting of the symptoms testimony were distinguished disability, and there's been no claim that this area is founded disability. So the only issue that's been raised when we look at the three-part credit of true rule in Garrison v. Colvin at 759-3D1020 is whether the record has been developed and further administrative proceedings would serve no useful purpose. As we look at Garrison, it says we could apply the credit of true rule under two circumstances if recorded symptoms are not properly considered, which is conceded, or if medical evidence isn't properly considered. It is not required that both of those be established before the relief is warranted. In any event, I want to talk about the three reasons why the district court felt further proceedings would be required. The district court said that there needed to be further development in determining the frequency and extent of woodworking activities. The full extent of the wood and metal working hobbies, correct? Correct. So when we look at the record, every report to the treating physician, reports to Social Security, indicate that Mr. Slice is slower in all of the activities that he performs, that he needs periodic rest periods. Whether he performs woodworking and metal activity is really irrelevant because he needs... But you said he was serious, didn't you? You didn't say he did it. That is my next point, Jim. Well, first of all, it seems to me, Counselor, you're pointing out that this was mentioned only once, and that's in a single examination note, correct? No, it's in a single consultative examination. Sorry, I'm a consultant. I didn't put that in there. That's okay. So I guess if it's not discussed in his testimony, not discussed in any activity report, only mentioned in this examination note, who gets the benefit of the doubt? Well, first I would tell you that there is no need for a benefit of the doubt. Let me explain that. If we look at that consultative examiner's note, which is a psychiatric note but not a physical note, the psychologist indicates Mr. Slice's description of his daily activities, and in there he talks about how it's very limited what time he gets up, he needs to rest. There's no mention of this hobby. The very next paragraph they talk about, are you married? He says, yes. They talk about his social aspects, and obviously the question was, what do you enjoy doing? And he says, I enjoy woodworking and metalwork. He doesn't say he doesn't, and if you look where it is in the report, you cannot draw that connection. The other point I would like to hear suggests that because of that argument, there is really no, if you will, contradiction. That's it. How can you enjoy a craft if you don't do it? Well, it's very easy, Your Honor, because, you know, Mr. Slice was 40 years old, and just because somebody may enjoy skiing doesn't mean they skied within the last three years or since they stopped work. And the same thing, just because they enjoy doing woodworking, that doesn't mean that they aren't doing woodworking activity. So you're in pretty good shape on that one. What were your other two reasons that the court abused the discretion in remanding? So the court said that further development was needed to explore why further surgery was not obtained, whether it was necessary. It's in the point of searches to note such as surgery. Okay. So the record's very clear on this point, but I would submit first that whether or not they recommended surgery doesn't change anything. This man has pain. We all know he has pain. There's a whole list of objective findings that I can go through, but I don't want to spend my time on that right now, because whether he has surgery or not doesn't tell us what he can or cannot do. But even if we were to find this issue relevant, let's look at what the treatment notes say. Mr. Doctor, isn't it true that the treatment notes suggest medication and not surgery? The treatment notes say he's not. I mean, I'd let you go through each one of the notes, but you only got 350 to add. Okay. The problem is this. I went through the doctor's treatment notes, and there's no recommendation of surgery. So you're on page 402 of the transcript. The treating physician writes, Spinal cord stimulator should be removed. Patient advised, quote, strongly, quote, to have it removed, and he cannot afford it. It was recommended. The records show he can't afford additional neurological consultations. He can't afford treatments. The only option for this man is his medications. He can't even take the premium medications for his headaches because he cannot afford it, and he has to choose between his methadone and his Dorset and other types of medications. But this record says on his spinal cord stimulator, a lead has migrated, and it should be removed. And when they talk to him about it, he says, I can't afford it. There is no contradictory evidence. What about the August 2011 treatment note? Where they say there's nothing further we can do but medications. If you look at those treatment notes, Your Honor, they talk about him being unable to afford it. It's absolutely true. The worry that I have is this. There's two possible reasons for not suggesting this surgery. One, it wouldn't have improved his condition. Or two, there was no need to escalate his treatment. Now, I can't tell which, so then I go through the record to try to come up with it. Now, you're making the argument, and I knew you'd make the argument, but my worry is I'm not sure they're commenting on whether he has the ability to pay for it. I worry that what they're really saying is it wouldn't help, the surgery wouldn't help, or there'd be no need to escalate his treatment. And I can't tell what they're saying. So if you'd really respond to that. Yeah, well, you worry something, Your Honor. And let's assume that that's true. Let's assume further surgery would not help Mr. Schleich. Mr. Schleich reported to this degree of pain, which nobody's questioning that he is paying. He's reported his need to rest and lie down during the day. Nobody disputes that he's slower than he used to be. Even the administrative law judge found he's slower. There's no dispute that just those limitations alone, based upon vocational expert testimony, would put food on the table, because he cannot maintain a regular pace. He would have absences. He has pain. He needs to rest and lie down during the day. Okay. One last question. Even if I were to credit it's true, I'm worried that we don't get to the end. The vocational expert said, if you're going along with your client, then there would be no jobs. If you're going along with Dr. Chafee, there would be jobs. So what's my authority for ignoring Dr. Chafee? Well, there are a number of reasons for that. First, the administrative law judge rejected Dr. Chafee's signature. But you're suggesting that he had rejected other, if you will, opinions without evidence necessary or without the statements necessary. If we're going to send this back and he's going to have a chance to look this through, it seems to me he'll have all that evidence in front of him. Your Honor, when you look at all the issues, no party to this litigation has taken the position that Dr. Chafee's report is supported by substantial evidence. The administrative law judge specifically rejected it because it wasn't consistent with the evidence. Any argument of the contrary is waived. And it seems, in fact, that Dr. Chafee's opinion is not supported by substantial evidence in this record. All right. Thank you. Thank you. The time has expired. I'm presenting Barry Hill. I'm with the Maine Police Department. I'm Dean Alvarez. I'm a Special Assistant U.S. Attorney for the District of Minnesota, representing the Commissioner of Social Security in this case, or the Acting Commissioner of Social Security. I want to address initially a few things that Schleiss's counsel said in his argument, the first being the very last thing that he said, that nobody thinks Dr. Chafee's opinion is supported by substantial evidence. If that's the case, why did Schleiss argue in favor of Dr. Chafee's opinion at the district court? Schleiss made the decision to argue in support of Dr. Chafee after the ALJ had rejected that opinion. And now he comes to the court and calls the court to ignore that he made that strategic litigation choice at the district court. Of course, John is not to do that. If a claimant takes the position after district court that they're just going to throw a whole bunch of things against the wall and see what sticks, that is certainly a valid legal strategy on one of the successful many Social Security appeals. But he doesn't get the choice to then back off of all the arguments that he already made. When he gets to the court, he did get the remedy that he wanted. And that remedy is dictated by the fact that he made those arguments in the first place. So he does argue that Dr. Chafee's opinion is supported by substantial evidence, and that's Schleiss himself. The second point on that argument has to do with the issue of the benefit of the doubt. It's true that the wood and metalworking is only mentioned in a single examination note. But that's the point. That's the problem. It's not developed in any way. And Schleiss's counsel has made a perfectly legitimate argument that it's minor, that this is a really big issue of the purpose he's extrapolating from the record in this case. You can make the same argument of the fact that there is nothing in the record about this, and that's the whole reason that the record is not complete and why there needs to be further evaluation of this. It's not that the counsel also argues, well, look, Mr. Schleiss says he doesn't do very much all day, but that doesn't far before the horse. The question of the wood and metalworking is a credibility issue. If, indeed, Mr. Schleiss is doing wood and metalworking, particularly given – Well, didn't it just say he was interested in it? Didn't it even say he was doing it? Well, that's right, but that's just more ambiguity, Your Honor. That's not something that this Court will have. He doesn't often chase red herrings. I mean, it's just a little sniff in the record, that's it. Well, the issue is not that this Court has chased a red herring. The issue is that the regulations require that ALJ to fully develop the record. And also, this Court's precedent requires before the remedy of ordering benefits can be imposed, the record has to be fully developed. Now, in a general case where he just mentions this, this may not be a big deal, but it's important in this case, and the reason for that is the particular impairments that Mr. Schleiss had. I mean, his main impairment has to do with pain in his neck and back and headaches and difficulty gripping. Now, if it was just, you know, I'm tired a lot, wood and metalworking wouldn't have a significant effect on credibility, but if you say I can't grip things, I can't use my shoulders, I can't lift my arms, and oh, by the way, I'm interested in wood and metalworking, that is an ambiguity that has a significant potential impact on credibility. You're ignoring, however, where this is mentioned, how it came up, and the language which my colleague has definitely put to you, which doesn't really say he's even doing it. I'm not ignoring it. It seems to me this whole, this note came up in a situation, a report or in an examination, if you will, that really wasn't direct to this kind of treatment or this kind of injury, and it's just there in a footnote, and it doesn't say anything about, oh, I'm doing it. It says I'm interested in it, and that's the only place in the record I can come up with it. So that's absolutely correct, John, but I don't think that changes, A, the ALJ is supposed to look at the entire record and ask this additional order of formality and cremity. B, the fact that he didn't report it to his training physicians actually makes it a bigger issue because it's a credibility issue. It's not necessarily a big issue of credibility if he isn't doing it and all he's interested in is one day doing it some day. That's not a big deal. That's absolutely true, Your Honor. The problem is from the record as it stands, you can't determine which of those it is. Well, it seems to me from the record as it stands, what I've suggested is exactly the way it is. For this court to make that determination would be an inappropriate financial determination at the appellate level. The Social Security Act is very clear. Financial determinations are supposed to be made at the aid by the ALJ. Clearly now that we are addressing cremity and not the ALJ's decision, the court's analysis has to be are there ambiguities in the record, not how do we resolve these ambiguities, what's the best result here. I mean, it goes so far as to maybe you're right, maybe the preponderance is that, yeah, this isn't really a big deal, but that's not the standard of the Social Security Act. The ALJ's labs don't rely on substantial evidence, which is less than a preponderance. Well, the real standard is that the district court abuses its discretion. That's correct. And I would suggest that all the district court has to do is make a rational determination. And so whether this court thinks that that was the best reading of the record is not the issue that's before the court now. The issue that's before the court now is, is this an acceptable reading of the record? And I think it is the acceptable reading of the record, and that's the question at this point. The third thing is whether surgery was recommended. If you want to briefly address Schleiss's argument, they're obviously sent to get the stimulator taken out. That's clearly not what anybody's talking about. Getting the stimulator taken out doesn't appear to have been an improve or a make worse issue for his back. The stimulator getting taken out had to do with a broken medical device is what it was. It doesn't necessarily seem to have had a significant impact on his condition, except for the fact that when it was actually working, it did provide significant relief to his symptoms. And that's sort of the weirdness of this case, is that we have a alleged onset date all the way in 2010, but we have treatment records, you know, working all the way up to that, and then a period of time where he was not actually removing himself out is available to work, and even now Schleiss doesn't claim he was disabled during that period. The spinal stimulator, despite the fact that it was providing significant benefit, broke more than a year before Schleiss claims that he was no longer able to work, but he was disabled. Now, when you look at Dr. Duke's opinion, he says, well, no surgical options available. Schleiss makes a good argument that in isolation, reading just that note, it seems like what Dr. Duke's saying is, like, the guy can't afford surgery. The issue is, though, that the district court was supposed to look at the record as a whole, and the record as a whole, given the fact that the spinal stimulator, when first installed and working, did provide significant benefit and allowed him to work and, in fact, continued to work for some period after, and there's no significant deterioration at the point of the alleged onset, makes one question whether there was potentially a surgical option or not. And this issue, again, is an ambiguity, and that's what the district court was looking at. It's not that it has to be decided one way or the other. It's about whether the district court made a decision that was rational, given the evidence before it, even if not necessarily in the best decision. Just briefly, I want to address a few points from the reply brief, because those haven't been addressed, obviously, in writing. First, the issue of the standard of review. It's unclear whether the defense is really arguing that this should be a de novo standard of review or not, but the bottom line is if he does, it should have been raised in his opening brief, so the parties would agree to it. And second, this court doesn't have the power to change that in a three-judge panel. That would have to be addressed by an ongoing court. Let me ask you this. The question is, was the record fully developed? Is that a discretionary call, or is that illegal? So I believe it's factual determination, and would he, just like other factual determinations of a district court, subject to it? We're looking at the same record. I mean, that's true. But based on the standard of review that's given under this motion in Garrison, remedy arises in infinite situations with infinite forms of facts, and that's why the district court is left with that discretion. The second thing, briefly, is this SSR 16-3P, that's from several years before the suit was even filed in this case, and should be applied here. I know we're running out of time. Let's see if the court has any further questions. No? Thank you very much. Thank you, Your Honor. I don't know where we took you to, counsel. We're going to give you a minute. Thank you, Your Honor. First, I want to respond to the statement that we took the position, or should I say took the position that Justice O'Connor was entitled to wait. That's not entirely accurate. What we argued before the district court was that Chaffee's report was not supported by substantial evidence. In fact, when he specifically stated, we do not dispute the ALJ's finding that the opinion was entitled to a little wait. And what we did say is, however, Dr. Chaffee applied to a reaching limitation. The administrative law judge did not address that limitation and explain why it does not exist, as that limitation would be consistent with the record. Pursuant to case law, that's an appropriate argument to be made at district court, and it is not any kind of argument that Dr. Chaffee's opinion is supported in entirety by substantial evidence of record. Well, I read what you said, and I'll go back and re-read it again. But it seemed to me you gave Dr. Chaffee a lot more support than you gave in an argument in front of me. No, what we noted to the district court was the findings, because he had some great physical findings, positive, straight-line, crazy, but a medium RFC was just not supported by any record at all. There were a couple of other issues, but you've run out of time, so give us your best on one issue. Okay. With respect to the onset data disability issue, Mr. Slice's position has always been that he has been disabled since 2009. Now, we amended his onset data disability because he was receiving some unemployment benefits. Those two things are not inconsistent, but it makes it more difficult. So what his position was before the administrative law judge was that, look, I'm only looking for benefits from 2010 forward. I have not worked since that time. I have not received any benefits since that time. They fit squarely within all aspects of the Social Security Act. Noting that there might have been some concerns with the administrative law judge about unemployment, he just changed the date. It wasn't that important. But his entire argument was since he stopped work, he, yes, looked for work. He tried to see what he could do. But he was always limited, and he specified those limitations. In the case you could really read to read on this point, it's playing in filter. It talks about you can work while disabled. There are unsuccessful work. Sometimes there are trial work periods. This does not mean you are not disabled. But Mr. Schweitzer did not want the administrative law judge to even have to deal with those issues. So all he did is say, look, we're going to use this date as the date of disability. But it's not a statement. I wasn't disabled before that date. All right. Counselor, you have had an extra two minutes over the one minute I already gave you. So thank you very much. I appreciate your argument. Case 15-16039 is now submitted.
judges: Schroeder, N.R. Smith, Piersol